985 So.2d 1256 (2008)
Shelita Winchester GUILLION
v.
Patrick Albert GUILLION, Jr.
No. 2007-CA-1442.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 2008.
*1257 Elaine Appleberry, Harvey, LA, for Plaintiff/Appellant.
Al J. Robert, Jr., Law Office of Al Robert, Jr., LLC, and Marc D. Winsberg, Schonekas Winsberg Evans & McGoey, L.L.C., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
This appeal arises from the trial court's judgment dated March 6, 2007, denying permanent spousal support to Shelita Winchester Guillion (Ms. Guillion).
Patrick Guillion, Jr. and Shelita Winchester were married in New Orleans on June 9, 1990 and had one child, Patrick, III (Patrick), born July 18, 1990. Patrick suffers from sickle cell anemia. The Guillions are now divorced and Ms. Guillion filed for permanent spousal support contending that she was unable to work due to the demands of caring for her son. After hearing witness testimony, reviewing the record and post trial briefs, the trial court issued a judgment denying Ms. Guillion's request for permanent spousal support. In its reasons for judgment, the trial court concluded that Ms. Guillion abandoned the marriage, and therefore she is not free from fault in the breakup of the marriage.
This court reviews the trial court's findings of fact under a manifest error or clearly wrong standard. McCarty v. McCarty, 98-2270 (La.App. 4 Cir. 3/31/99), 729 So.2d 1146. The petitioner for final periodic spousal support must prove: 1) that he/she is free from fault in the break up of the marriage; and 2) that he/she is in need of final periodic support. La. Civ.Code art. 112.
Mr. Guillion has worked in the financial services industry throughout the marriage and at the time of the hearing he was employed by Liberty Bank in New Orleans. Ms. Guillion has previously been employed as a law firm receptionist and has done data entry for insurance and financial service companies. During the course of their marriage the Guillions lived in several cities across the country for his employment. In 2002 Mr. Guillion accepted a position with the Nagin administration and the family returned to the City of New Orleans to live.
In January of 2004, Mr. Guillion accepted a job in Dallas, Texas. So not to interrupt Patrick's school year, Mr. Guillion moved to Dallas with plans of relocating his family that Spring. Patrick was injured during that school year and was hospitalized for a few months in 2004. Ms. Guillion and Patrick remained in New Orleans until evacuating from Hurricane Katrina in August 2005. During the time Mr. and Ms. Guillion maintained two separate households, Mr. Guillion commuted to New Orleans from Dallas to visit with his family. The family shared an apartment in Dallas after evacuating for Hurricane Katrina.
On October 24, 2005, Ms. Guillion departed the family apartment with her son. The circumstances under which she left the apartment are in dispute. She claims that she wanted to cool off after a heated argument with Mr. Guillion. However, during Ms. Guillion's testimony she was unable to elaborate on the subject matter of the argument other than to say it involved finances. When specifically asked by the trial court, "[w]hat were you arguing about?" She mentioned the transfer of funds from one of Mr. Guillion's account to another of his accounts. She also mentioned a $500 check written to someone *1258 she did not know and mentioned the possibility of fraud on the part of Mr. Guillion's daughter. At times the trial court referred to Ms. Guillion's testimony as confusing and tried to elicit more responsive answers. Ms. Guillion's overall testimony was at best inconsistent and at times was impeached by previous deposition testimony.
Mr. Guillion testified that there was no heated argument and stated that on the day Ms. Guillion left their apartment he had called her to have lunch but she declined. He further testified that when he got home from work on the evening of October 24, 2005, Ms. Guillion was not there and she had cleared all of her belongings from the apartment. Mr. Guillion also testified that he began reviewing phone records that indicated Ms. Guillion had been making arrangements to abandon the marriage. These arrangements included contacting attorneys. Upon that discovery, he had the locks to the apartment changed.
The evidence at trial supported the fact that Patrick has major medical problems, but they are not so debilitating that Ms. Guillion would be prevented from working. Ms. Judith Lide, a vocational consultant, testified that Ms. Guillion had the skills necessary to earn anywhere from $11,000.00 to $17,000.00 per year working a part-time job that would be flexible enough to accommodate her caring for Patrick.
The trial court sitting as the trier of fact is given great discretion in his determinations of credibility. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Considering the facts and evidence presented at trial, we cannot find the trial court's determinations to be manifestly erroneous or clearly wrong.
Ms. Guillion also raises two assignments of error pertaining to evidentiary rulings made by the trial court. First, Ms. Guillion argues that the trial court erred in not allowing into evidence a police report from an officer in Dallas, Texas. Secondly, she claims that the trial court erred in allowing excerpts from her deposition testimony from a separate case to be used to impeach her testimony.
When counsel for Ms. Guillion attempted to introduce the Texas police report, counsel for Mr. Guillion objected on the ground that the document was inadmissible hearsay. The trial court agreed. The trial court did, however, allow Ms. Guillion the opportunity to review the document to refresh her memory and she testified as to the events which were the subject of the report. The officer was not subpoenaed to testify and the record is void of any evidence to suggest the document was a certified copy. We do not find that the exclusion of the document into evidence was an error on the part of the trial court.
In Ms. Guillion's last assignment of error, she avers that the trial court erred by allowing the admission of excerpts from her deposition taken in the Texas proceeding for purposes of impeachment.
La.Code Civ. Proc. art. 1450 reads in pertinent part:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting *1259 or impeaching the testimony of deponent as a witness.
At trial, when Ms. Guillion was asked about her phone activity during the time leading up to the break up of her marriage she either denied making calls or stated she could not recall the events. In response, counsel for Mr. Guillion presented her with excerpts from deposition testimony she had given in a divorce proceeding initiated by Mr. Guillion in Texas. Ms. Guillion's counsel objected as to relevancy. The objection was overruled and the questioning was allowed. As the cross examination was being conducted, the trial court stated that if counsel was going to continue using the deposition it would need to be entered in its entirety. Cross examination of Ms. Guillion continued without further use of the deposition. Counsel for Ms. Guillion did not move to have the deposition admitted in its entirety on re-direct examination and no more objections were lodged regarding the deposition. Furthermore, the issue was not raised in post trial memorandum. Thus, we find this objection to be untimely.
Accordingly, for the reasons discussed we affirm the trial court' judgment.
AFFIRMED.